IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01012-WDM

ROSE FORREST,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

    Plaintiff Rose Forrest (Forrest) appeals the denial of her application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security (Commissioner). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. I conclude that the Commissioner's decision should be affirmed.

### Background

    Forrest was born in January, 1960. Administrative Record at 66. She completed high school and has worked primarily in the food service industry, including in management and shift leader positions, and in retail. *Id.* at 85-86, 93.

    Forrest asserts that she became disabled on May 27, 2003 as a result of a work-related accident which caused neck and back injuries. *Id.* at 84-85. She also alleges disabling conditions from Charcot-Marie-Tooth disease (which causes numbness,

weakness, and muscular atrophy in her upper and lower extremities) and depression. *Id.*

Forrest's protective filing date for disability insurance and supplemental security income benefits was March 15, 2004. *Id.* at 66. After denial, Forrest requested a hearing, which was granted. *Id.* at 38. The hearing was held before ALJ Richard J. Maddigan on April 28, 2005. *Id.* at 413-430. Forrest was represented by counsel at the hearing and a vocational expert (VE) testified in response to several hypothetical questions about jobs existing in the economy that a person with some of Forrest's restrictions might be able to perform. *Id.* at 424-26. The ALJ issued an unfavorable decision on October 13, 2005. *Id.* at 22-34. Forrest filed a Request for Review with the Appeals Council on October 25, 2005. *Id.* at 16. Forrest's Request for Review with the Appeals Council was denied on April 6, 2006. *Id.* at 6.

<u>Medical History</u>

Forrest may have had a pre-existing back and/or neck condition as a result of, among other things, a motor vehicle accident in 2002, for which she received therapeutic massage. *Id.* at 133-36. She was diagnosed with Charcot-Marie-Tooth disease in January 2003, after nerve conduction studies showed "severe motor and sensory peripheral neuropathy with diffuse denervation" of her feet and lower legs. *Id.* at 138-39. She alleges that she injured her back on the job while lifting a heavy bag and then reinjured it while loading trash in a dumpster on May 27, 2003 after returning to work. *Id.* at 158.

An MRI of her lumbar spine on June 4, 2003 showed "broad-based protrusion

L4-5 disc with significant exit foraminal encroachment on the left and arguably more on the right" as well as central protrusion on L5-S1 disc and multiple level face joint arthrosis. *Id.* at 150. An MRI of her thoracic spine did not show any significant abnormalities. *Id.* at 151. She was treated with physical therapy, painkillers, home exercises, and injections and was rated at maximum medical improvement on October 15, 2003. *Id.* at 179, 188. She was treated by her primary care physician, Dr. James Zimmer, and Dr. Kenneth Finn at Springs Rehabilitation during this time period.

A December 9, 2003 functional evaluation by Dr. Finn indicated that Forrest could do some lifting, consistent with sedentary or light work, had few postural or positional limitations (bending, squatting, reaching overhead only occasionally), could sit constantly with breaks at least once an hour, and could stand and walk frequently (20 minutes at one time, 40 minutes in a one-hour period). *Id.* at 159-63.

Forrest apparently returned for treatment with Dr. Zimmer in March 2004 because of neck pain experienced after raking leaves. *Id.* at 225. She was treated with an injection, traction, TENS, and home exercises, which apparently gave her some relief. *Id.* Forrest also went to see Dr. Zimmer in 2003-2004 for treatment of various gastroenterological problems, including irritable bowel syndrome, and other miscellaneous issues.

The Division of Labor sent her for an independent medical evaluation on March 20, 2004, which was conducted by Dr. Katherine Leppard. *Id.* at 266-69. Dr. Leppard opined that Forrest did have a lumbar spine impairment but could not adequately assess the effects of Forrest's depression. *Id.* at 268-69. Dr. Leppard gave Forrest an

3

overall impairment rating of 15% and recommended light duty work with no lifting over 10 pounds, some positional restrictions, and the ability to sit and stand at will. *Id.* She also recommended epidural injections. *Id.* Forrest had an injection in July 2004. *Id.* at 362. She reported temporary relief but a return to her baseline pain level after a few days. *Id.* at 379. She saw Dr. Finn and other physicians throughout late 2004 for her back pain.

There was some disagreement among her physicians about whether she is a candidate for disc fusion surgery. Dr. Roger Sung, an orthopedist, opined in August 2004 that she could undergo back surgery if she stopped smoking and was cleared psychologically. *Id.* at 400. However, other doctors disagreed because of her smoking, weight (she is obese), depression, and because she has three levels of disc degeneration. *Id.* at 371, 388, 391, 396. In addition, she did not stop smoking. *Id.* at 372. Surgery was apparently ruled out as an option by Forrest's workers compensation insurer.

Dr. Finn ordered another MRI of Forrest's lumbar back, which was taken April 25, 2005. *Id.* at 318. It showed the same degeneration and disc bulges, with evidence of nerve root impingement at L5-S1 and L4-L5. *Id.* at 318-19. Forrest had another injection in May 2005. *Id.* at 364. She reported her pain to be 5/10 after the procedure. *Id.*

Dr. Leppard did a follow up evaluation in June 2005. *Id.* at 391. She rated Forrest at Maximum Medical Improvement and recommended against back surgery. *Id.* She gave Forrest a lumbar impairment rating of 15% and a whole person impairment

rating of 23%. Id. at 392-95.

The record also demonstrates treatment for depression. Forrest was evaluated in November 2003 and diagnosed with major depression with a GAF of 60, noting situational stressors of physical pain and other symptoms, financial problems, and relationship issues with her daughter and boyfriend. *Id.* at 152-4. Dr. Gamblin, the evaluating psychiatrist, opined she was appropriately being treated with medication but could use psychotherapy to address the relationship issues. *Id.* at 154. Another evaluation, by Janice Riggs LPC on November 20, 2003, evaluated Forrest with a GAF of 50-55. *Id.* at 155-56. Forrest saw Riggs for psychotherapy from November 2003 to October 2004. *Id.* at 274-84, 332-38.

Forrest was evaluated again for mental disorders by Dr. Brad Marten in May 2004. *Id.* at 286-291. He noted that she engages in some house and yard work, can take care of her own hygiene needs, manages her bills and other personal financial affairs, visits frequently with friends, and can drive. *Id.* at 287. Forrest reported that her depression began around 1996 with some remission at times. *Id.* at 288. Dr. Marten found that she had borderline to low average range of memory functioning, with greater ability to recall visual information then auditory input. *Id.* at 290. He diagnosed her with major depressive disorder, "recurrent mild," and rated her with a GAF of 54. *Id.* In his summary, he noted that she is able to accomplish all activities of daily living, but has some diminished concentration with low memory capacity. *Id.*

In September 2004, Forrest was seen by Dr. Dale P. Mann for treatment of pain and depression and to assess her suitability for back surgery. *Id.* at 339. He

diagnosed her as having "significant psychological distress at the present time," requiring regular and aggressive treatment before surgery would be recommended, as well as severe anxiety. *Id.* at 342. He treated her with biofeedback relaxation techniques, which she was also to use on her own. *Id.* at 327. She reported to Dr. Mann that her back pain was at about 3 or 4 out of 10 in late September 2004. *Id.*

Forrest takes a number of medications for anxiety and depression, pain, cholesterol, reflux, and other abdominal conditions. *Id.* at 91-92. She lists on her "Daily Activities Questionnaire," dated March 25, 2004, that she vacuums, loads the dishwasher, and does some laundry and gardening, but with pain. *Id.* at 103. She reports that she watches television and reads but has trouble remembering. *Id.* She talks on the phone "a lot" and goes out of the house at least once a day to take her mother to get dialysis. *Id.* at 104. Forrest reports that she has difficulty concentrating, but can follow instructions. *Id.* at 106. She claims constant back pain, for which she takes medication and uses a TENS unit and heat packs. *Id.* at 107-8.

Dr. Zimmer's assessment of July 11, 2005 imposes the following limitations: (1) lying down at least 15 minutes every two hours; (2) missing four or more days from work per month; (3) lifting 0 pounds; (4) avoid lifting as much as possible; (5) standing no more than 5-10 minutes before sitting; (6) sitting no more than 30 minutes before standing or lying down; (7) avoid all postural activities; (8) avoid reaching as much as possible. *Id.* at 359-61.

Administrative Proceedings

At the hearing, Forrest testified that she had tried to do two food service jobs

since her onset but had to quit because she was unable to stand for long periods. *Id.* at 416. She testified she could sit at a job, as long as she could get up at will. *Id.* at 418. She admitted she had not been compliant with certain treatment recommendations, including weight loss, smoking cessation, and exercising. *Id.* at 419. She has lost some weight and weighed approximately 174 pounds at the hearing (she is 5' 1"). *Id.* She also testifies that she does some of her physical therapy exercises at home. *Id.* at 420. She continues to smoke 1-2 packs of cigarettes a day. *Id.* at 421. The ALJ chided her for this. *Id.* at 421-22. Forrest testified that she was able to carry her purse, which weighed about 5 pounds. *Id.* at 422.

A vocational expert appeared at the hearing and testified that Forrest's previous work was in the light category. *Id.* at 424. The ALJ propounded a hypothetical question concerning an individual with Forrest's education and work experience, limited to sedentary exertional level but with the ability to sit or stand at will, lifting no more than 10 pounds, with limited postural demands, and in a job involving simple tasks that can be learned in up to six months, low stress environment, and no significant production requirements. *Id.* at 425. The VE identified several jobs that could be performed under these conditions, including various clerk positions, and provided evidence that these jobs exist in Colorado. *Id.* at 425-26. The ALJ concluded by noting that Dr. Zimmer's opinions were not well supported and that Forrest was not doing everything she could to alleviate her conditions, particularly by continuing smoking. *Id.* at 426-27.

The ALJ issued a decision on October 13, 2005. *Id.* at 22-34. The ALJ

thoroughly reviewed and summarized the medical records and made the following findings:

1. Forrest had not engaged in substantial gainful activity since her onset date. *Id.* at 23.

2. Forrest had severe impairments, specifically Charcot-Marie-Tooth disease, disorders of the back, and affective disorders. *Id.* at 24.

3. None of the impairments, alone or in combination, met the criteria of any listed impairment. *Id.* at 24.

4. In determining Forrest's residual functional capacity, the ALJ rejected Dr. Zimmer's severe limitations on Forrest's activities. *Id.* at 29. The ALJ noted that Dr. Zimmer opined loss of lower extremity motor function; however, no other physician noted this and it was contradicted by Dr. Zimmer's examination notes, which identified numbness but not pain. *Id.* Dr. Zimmer also indicated Forrest would miss a significant number of work days but did not provide an explanation for this. *Id.* Dr. Zimmer's opinion that Forrest could carry no weight was not supported by any medical evidence and contradicted by Forrest's ability to carry a purse at the hearing. *Id.* In addition, the medical records did not support Dr. Zimmer's opinion that Forrest had to avoid all postural activities. *Id.*

5. The ALJ also did not find Forrest's report of disabling pain to be fully credible, as her activities demonstrated that she was able to engage in a number of household and other tasks, could drive, socialize, and is going to college. *Id.* at 29-30. In addition, her report of extreme pain was not supported by the medical findings. *Id.* at 30. Finally, Forrest's failure to follow her physician's recommendations suggested that her symptoms were not as serious as she claims. *Id.*

6. The ALJ found that Forrest does have mental impairments that mildly restrict her activities of daily living, including mild difficulties in maintaining concentration, persistence, and pace. *Id.* at 30.

7. The ALJ found that Forrest had a residual functional capacity to perform sedentary work with an option to sit and stand at will, with occasional bending, squatting and overhead reaching. She also retains the ability to perform all mental activities required for unskilled work and perform simple tasks learned within six months with no significant production requirements. *Id.* at 31.

       8.       Forrest could not perform her past relevant work.  *Id.* at 32.  However, Forrest was capable of performing jobs existing in significant numbers in the economy, as evidenced by the vocational expert's testimony.  *Id.* at 32-33.

The Appeals Council denied a request for review, rendering the ALJ's determination final for purposes of this appeal.  *Id.* at 6-9.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards.  *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  "Substantial evidence is '"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'"  *Id.* (citations omitted).  The failure to apply correct legal standards or to provide an adequate basis from which I may determine that the appropriate legal principles were followed is grounds for reversal.  *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993) (citation omitted).

## Discussion

Forrest makes one argument on appeal, that the ALJ erred in rejecting Dr. Zimmer's July 11, 2005 opinion regarding her limitations.  I disagree.  The ALJ's reasons for rejecting the opinion are well supported by the record and it appears that the ALJ considered the relevant factors.

The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The opinion of a treating source is entitled to "controlling

weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188). If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* at 1300 (quoting SSR 96-2p). These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

Before an ALJ can reject the opinion of a treating physician completely, he must give specific, legitimate reasons for doing so. SSR 96-2p; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). "[I]n choosing to reject the treating physician's assessment, an ALJ may not

make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (citation omitted).

The ALJ provided specific, legitimate reasons for rejecting Dr. Zimmer's opinion. Specifically, the ALJ noted that:

• Dr. Zimmer stated that Forrest had loss of lower extremity motor function, which was not found by any other examining physician, and was inconsistent with his own treatment note that Forrest had some numbness, but minimal pain; Dr. Leppard's finding that Forrest had normal strength; Dr. Sung's finding that she had normal gait and coordination; Dr. Janssen's essentially normal physical findings; and Dr. Finn's statement that there was no evidence of muscle atrophy.  Administrative Record at 30.

• Dr. Zimmer stated, without explanation, that Forrest could not carry any weight at all, which was contrary to the findings and opinions of all other treating and examining physicians, and was even contrary to Forrest's testimony at the hearing that she was carrying a purse weighing five pounds. *Id.*

• Dr. Zimmer stated, without explanation, that Forrest would probably miss up to four days of work every month, which was apparently based upon Forrest's subjective complaints and self-assessed limitations.  *Id.*

• Dr. Zimmer stated that Forrest should avoid balancing, stooping, crouching, kneeling, crawling, and reaching, but his treatment notes and objective findings do not contain any support for these limitations.  Also, these limitations were inconsistent with the reports of Drs. Finn, Leppard, Sung and Janssen.  *Id.*

Although the ALJ did not expressly identify the *Watkins* factors, his review and summary of the medical record indicates that he understood and considered both the length and nature of the treating relationship.  His reasons for rejecting Dr. Zimmer's opinion go directly to the lack of support for the severe limitations imposed and the

11

inconsistency with almost all the other medical findings and opinions. In addition, although not expressly identified, Dr. Zimmer appears to be a general practitioner and not a specialist. Thus, even if the ALJ had considered this factor, it would not have increased the weight to be given to the opinion. It does not appear that the ALJ made speculative or credibility-based judgments. For all of these reasons, the ALJ properly rejected Dr. Zimmer's opinion.

### Conclusion

Based upon my review of the record in this case, I find that the Commissioner's decision is based on substantial evidence and reflects a correct application of the law. Accordingly, the determination that Forrest is not disabled because she is capable of performing jobs existing in significant numbers in the economy.

DATED at Denver, Colorado, on July 16, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge